UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRENDA MULHOLLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:13-cv-01329-JCH |
| | ) |
| MASTERCARD WORLDWIDE, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of Defendants Mastercard Worldwide ("Mastercard") and The Hartford and Hartford Life Group Insurance Company (together, "Hartford") for Summary Judgment. (ECF No. 16.) The Motion has been fully briefed and is ready for disposition.

## BACKGROUND

On July 11, 2013, Plaintiff Brenda Mulholland filed suit against Defendants, alleging that she had been denied long-term disability ("LTD") benefits in violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"). (Compl., ECF No. 1.) On September 2, 2014, Defendants moved for summary judgment. (ECF No. 16.) Upon determining that Plaintiff's action was time-barred, this Court granted Defendants' summary judgment motion. The matter has been remanded, and the Court will now consider Defendants' Motion and the Parties' arguments on the merits.

The following facts are undisputed.[1] Plaintiff was employed by Mastercard as a Senior Software Engineer, and was, at all relevant times, covered under Mastercard's employee benefit

---

[1] Defendants filed a Statement of Uncontroverted Material Facts ("SUMF"). (ECF No. 17.) Plaintiff, in contravention of this Court's Local Rule 7-4.01(E), failed to specifically controvert

1

plan, which offered a LTD Insurance Policy that was issued and administered by Hartford (hereinafter, the "Policy"). (Compl., ¶ 7; Defendants' Statement of Uncontroverted Material Facts ("SUMF"), ECF No. 17 at ¶¶ 1-2.) Under the terms of the Policy, Hartford retained "discretionary authority to determine [Plaintiff's] eligibility for and entitlement to benefits under the Policy." (Policy, ECF No. 23 at 71-72, 94.) The Policy defined "disability" as follows: "Disability means that during the Elimination Period[2] and the following 12 months, Injury or Sickness causes physical or mental impairment to such a degree of severity that You are: 1) continuously unable to perform the Material and Substantial duties of Your Regular Occupation; and 2) not Gainfully Employed." *Id.* at 78.

On or about November 22, 2006, Plaintiff ceased employment with Mastercard "because of symptoms associated with chronic vestibulopathy including dizziness, imbalance, difficulty concentrating, and the inability to focus in a normal way." (SUMF, ¶ 13.) On February 23, 2007, Hartford approved Plaintiff's application for LTD benefits. *Id.* ¶ 18. Hartford periodically reviewed Plaintiff's claim while continuing to pay her LTD benefits under the Policy. *Id.* ¶ 19.

In July 2007, Plaintiff underwent carpal tunnel release surgery. *Id.* ¶¶ 24-25. In November 2007, Plaintiff underwent an irrigation and debridement procedure on one of her fingers, following which she was referred to therapy from December 19, 2007 through January 18, 2008. *Id.* ¶¶ 25, 26. On or about September 7, 2007, Harford received an Attending Physician's Statement ("APS") from Plaintiff's neurologist, Dr. Goldring, which listed "a

---

any of Defendants' facts. In addition, many of the facts listed in Plaintiff's statement of facts are similar or duplicative of the facts listed in Defendants' SUMF. (ECF No. 34.1.) Therefore, the Court will deem admitted each fact contained in Defendants' SUMF for purposes of the pending Motion.

[2] The Elimination Period is 90 days, and "begins on the day You become Disabled." (ECF No. 23 at 79.) It is a period of continuous Disability which must be satisfied before You are eligible to receive benefits from [Hartford]." *Id.*

primary diagnosis of vertigo, with current subjective symptoms of dizziness and balance problems, and current physical examination findings of chronic vestibulopathy." *Id.* ¶¶ 20-21. The APS did not list any restrictions or limitations and indicated that Plaintiff "did not have any cognitive impairments in the area of memory, orientation or the ability to understand or reason." *Id.* ¶ 22. Plaintiff was subsequently referred to a Dr. Goebel for physical examination and testing on October 25, 2007, "to determine whether her symptoms of dizziness and balance problems were related to the physical condition of vestibulopathy." *Id.* ¶ 29. Dr. Goebel's physical examination and testing led him to the conclusion that "Plaintiff did not have vestibulopathy," and that "her dizziness appeared to be more related to her anxiety and depression," and he recommended "aggressive psychiatric treatment by Plaintiff's psychiatrist, Dr. Malik." *Id.* ¶ 30-31. As relevant, from January to October 2007, Plaintiff saw a Dr. Malik for psychiatric treatment. (ECF No. 21 at 46.)

From September through November 2007, Hartford made several requests for information and medical records from Plaintiff and her treating physicians. In January 2008, upon receiving additional information and records, Hartford continued to consult with Plaintiff's treating physicians and to analyze Plaintiff's medical records. (SUMF, ¶¶ 23, 27.) On or about January 16, 2008, Hartford determined that Plaintiff's only claim of physical disability related to her finger, and that after January 18, 2008, "there was no medical evidence to support a physical disability from Plaintiff's position as a Senior Software Engineer." *Id.* ¶ 28. In January and February 2008, Hartford made several attempts to obtain medical records from Dr. Malik, but received none. *Id.* ¶ 33. On February 12, 2008, Hartford determined that "the current medical information did not support functional limitations due to a mental nervous condition." *Id.* ¶ 34. The next day, Hartford issued a letter terminating Plaintiff's LTD benefits as of January 19,

2008, based upon its determination that "the evidence did not support her claim that she was unable to perform the material and substantial duties of her regular occupation…and that [she] was, therefore, not disabled under the [Policy]." *Id.* ¶ 35.

On or about March 28, 2008, Hartford received a letter from Dr. Malik. (ECF No. 21 at 46.) The letter explained that Dr. Malik had initially seen Plaintiff on January 22, 2007; that Plaintiff had complained of various symptoms, including dizzy spells and feelings of depression; and that Plaintiff had been diagnosed with major depressive disorder and post-traumatic stress disorder. Dr. Malik also stated, "[Plaintiff] was last seen in my office on October 15, 2007 so I am unable to verify her condition at this time." *Id.* In the letter, Dr. Malik did not express any opinion regarding whether Plaintiff's condition rendered her disabled or unable to work.

On April 29, 2008, Plaintiff appealed Hartford's initial decision to terminate her LTD benefits, and submitted additional medical records in support of her claim. (SUMF ¶ 36.) Hartford retained independent, board-certified consultants—Dr. Lowe, a specialist in internal medicine, and Dr. Rummler, a specialist in psychiatry—to review Plaintiff's file. *Id.* ¶ 37. On August 14, 2008, Dr. Lowe and Dr. Rummler issued a Peer Review Report ("PRR") discussing their opinions regarding Plaintiff's capacity for full time work. The PRR listed and summarized the data and records they had reviewed in reaching their conclusions. (PRR, ECF No. 20 at 66-71.) In the PRR, Dr. Lowe opined that Plaintiff had no physical restrictions or limitations that would have prevented her from working as of January 19, 2008. (*Id.* at 68.) Dr. Rummler opined that, from a psychiatric point of view, for the period following January 19, 2008 Plaintiff presented no restrictions in her capacity for full time work activities. *Id.* at 70-71. During the course of their reviews, Dr. Lowe and Dr. Rummler attempted to contact Plaintiff's then-current treating physician and psychiatrist—respectively, Dr. Gutwein and Dr. Giuffra—to discuss

Plaintiff's medical condition, but they received no response. (SUMF ¶¶ 40, 43.) On August 19, 2008, Hartford concluded that its prior decision to deny Plaintiff's LTD benefits under the Policy was proper. *Id.* ¶ 44.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial responsibility of informing the district court of the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party discharges this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quotations omitted). The nonmoving party may not "rest upon mere allegations or denials of its pleadings." *Id.* at 256.

At the summary judgment stage, the Court must view the facts in a light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

"Under ERISA, a plan participant may bring a civil action to 'recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Pralutsky v. Metro. Life Ins. Co.*, 435 F.3d 833, 837 (8th Cir. 2006) (quoting 29 U.S.C. § 1132(a)(1)(B)). "Where the plan reserves

5

discretionary authority to the plan administrator," the Court applies "a deferential standard of review, considering whether the administrator abused its discretion." *Id.* (citations omitted).

In the instant case, Plaintiff does not dispute that the Policy granted Hartford the discretionary authority to determine eligibility for benefits under the Policy.[3] The Court therefore reviews Hartford's decision to deny benefits for abuse of discretion.

Under the abuse-of-discretion standard, the Court will "reverse the plan administrator's decision only if it arbitrary and capricious." *Groves v. Metro. Life Ins. Co.*, 438 F.3d 872, 874 (8th Cir. 2006) (quotation and citation omitted.) In determining whether the plan administrator's decision was arbitrary and capricious, the Court must "ask whether the decision to deny [the Plaintiff] benefits was supported by substantial evidence, meaning more than a scintilla but less than a preponderance." *Schatz v. Mut. of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000) (citation omitted). "Provided the decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made." *Id.* (quotation and citations omitted).

In making its determination, "a reviewing court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales." *King v. Hartford Life & Acc. Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005)

---

[3] Plaintiff argues that, "due to…procedural irregularities," the Court should review the denial of benefits de novo. (ECF No. 34 at 8-9 (citing *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998) (holding that less deferential standard of review applies when (1) palpable conflict of interest or serious procedural irregularity existed, which (2) caused serious breach of plan administrator's fiduciary duty)).) "The Supreme Court in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 115-17 (2008), in part abrogating *Woo*, held that a conflict of interest should be analyzed as a factor under the abuse-of-discretion standard instead of changing the standard from abuse of discretion to a less deferential standard." *Waldoch v. Medtronic, Inc.*, 757 F.3d 822, 830 n.3 (8th Cir. 2014). The Eighth Circuit, however, "has not definitively resolved the impact of *Glenn* on the *procedural irregularity* component of the *Woo* sliding scale approach." *Id.* (quotation and citation omitted). In any event, Plaintiff has failed to establish that any procedural irregularities existed in this case.

(quotation and citation omitted).[4]  In addition, "[a] decision supported by a reasonable explanation will not be disturbed even if another reasonable interpretation could be made or if the court might have reached a different result had it decided the matter de novo." *Phillips-Foster v. UNUM Life Ins. Co. of Am.*, 302 F.3d 785, 794 (8th Cir. 2002) (citation omitted). *See also Midgett v. Wash. Grp. Int'l. Long Term Disability Plan*, 561 F.3d 887, 897 (8th Cir. 2009) ("The requirement that the [plan administrator's] decision be reasonable should be read to mean that a decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision.").

Defendants argue that Hartford's initial and final decisions to terminate Plaintiff's benefits were supported by substantial evidence and did not constitute an abuse of discretion. (ECF No. 18.)  Plaintiff counters that Hartford improperly terminated her benefits after an incomplete review of her medical records.  Specifically, Plaintiff contends that in reaching its final decision Hartford failed to obtain records from Dr. Cotton and Dr. Malik, the physicians who Plaintiff asserts had most recently treated her and had "opined" that she was "disabled," and instead improperly relied upon the "uncontested opinions" of Dr. Lowe and Dr. Rummler. (ECF 34.2 at 9-11.)

Plaintiff, however, has failed to cite any evidence in the record to support her conclusory assertions that Dr. Cotton and Dr. Malik had opined that she was disabled.  With respect to Dr. Cotton, Plaintiff alleges in her statement of facts that she was "referred to treating psychologist Karen Cotton Psy.D.," and that "Defendants knew or should have known about treatments performed by Karen Cotton as referenced in the official records of [Dr. Giuffra]…." (ECF No. 34.1 at 4, 8.)  However, the only material in the record that Plaintiff cites for support is an Out-

---

[4] In light of this standard, the Court will not consider Plaintiff's evidence of her social security disability determination.

7

Patient Progress Note, completed by Dr. Giuffra and dated February 18, 2008, which refers to a "K. Cotton," but provides no other information regarding this individual, her purported treatment of Plaintiff, or the existence of any medical records documenting such. (ECF No. 21 at 8.) With respect to Dr. Malik, Plaintiff alleges that "Defendants terminated [Plaintiff's] benefits based on a letter from Dr. Malik…and not medical records." (ECF No. 34.1 at 4.) However, the letter stated that Dr. Malik was "unable to verify [Plaintiff's] condition" because she had not seen Plaintiff since October 2007. (ECF No. 21 at 46.) In addition, Plaintiff has presented no evidence demonstrating the existence of any medical records that show Dr. Malik ever opined that she was disabled or unable to work. *See Groves*, 438 F.3d at 875 ("It is not unreasonable for a plan administrator to deny benefits based upon a lack of objective evidence"); *Pralutsky*, 435 F.3d at 839 (same; collecting cases). Furthermore, even if Plaintiff could prove that Dr. Cotton and Dr. Malik had opined that she was disabled, "[t]he Supreme Court has recognized that "treating physicians are not automatically entitled to special weight in disability determinations under ERISA." *Midgett*, 561 F.3d at 897 (quotation and citation omitted); *see also Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir. 2006) ("When there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to deny benefits unless the record does not support denial.").

On the record before it, the Court finds that Hartford's decision to terminate Plaintiff's benefits was supported by a reasonable explanation. Hartford's reviewing physicians both opined that Plaintiff presented no restrictions or limitations that would have prevented her from working as of January 19, 2008. The PRR identified the data and records Dr. Lowe and Dr. Rummler reviewed and relied upon in reaching their conclusions, and Plaintiff does not contest the accuracy of the data or records summarized therein. Therefore, the Court concludes that

Hartford's decision did not constitute an abuse of discretion, and Defendants' Motion for Summary Judgment will be granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 16) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims are **DISMISSED with prejudice**. A separate judgment will accompany this Memorandum and Order.

Dated this 29th day of March, 2016.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE